# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

E.L. HOLLINGSWORTH & CO., a
Michigan corporation,

            Plaintiff/Counter-Defendant,

v.

ZURICH AMERICAN INSURANCE
COMPANY, an Illinois corporation,

            Defendant/Counter-Plaintiff.

Case No. 17-cv-10989

Judge David M. Lawson

Magistrate Judge R. Steven Whalen

---

| | |
|---|---|
| Eric W. Ruth (P80538) | Lori McAllister (P39501) |
| E.L. Hollingsworth & Co. | Attorney for Defendant/Counter-Plaintiff Zurich American Insurance Company |
| Attorney for Plaintiff/Counter-Defendant | |
| 3039 Airport Drive, North | |
| Flint, MI  48507 | DYKEMA GOSSETT PLLC |
| (810) 233-7331 | Capitol View Bldg. |
| eruth@elhc.net | 201 Townsend Street, Suite 900 |
| | Lansing, MI  48933 |
| | (517) 374-9150 |
| | lmcallister@dykema.com |

---

## DEFENDANT/COUNTER-PLAINTIFF ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS AND AS TO ZURICH'S COUNTERCLAIM

Defendant and Counter-Plaintiff Zurich American Insurance Company ("Zurich") hereby moves this Court for entry of summary judgment pursuant to Fed. R. Civ. P. 56(c).  In support of its Motion, Zurich states:

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

1.     Plaintiff's single count complaint asserts an alleged breach of contract.  Plaintiff alleges that Zurich improperly billed it for a retrospectively adjusted insurance premium calculated using payments that Zurich did not make.  Because there is no evidence to support such a claim, Zurich is entitled to summary judgment of Plaintiff's Complaint.

2.     Zurich has issued three retrospective premium adjustments on the policies it issued to Plaintiff.  Plaintiff has not paid these premium invoices, totaling $158,082.  There is no valid defense to the payment of the invoices.  As a result, Zurich is entitled to summary judgment on its Counterclaim.

3.     Zurich has sought Plaintiff's concurrence in the dismissal of the Complaint and the payment of the Counterclaim, which has been denied, necessitating this Motion.

Wherefore, for the reasons set forth herein and in the accompanying Brief in Support, Zurich requests that Plaintiff's Complaint be dismissed with prejudice, and that judgment be granted to Zurich on its Counterclaim in the amount of $158,082.

Respectfully submitted,

Dykema Gossett PLLC


*/s/ Lori McAllister*
Lori McAllister (P39501)

Counsel for Defendant/Counter-Plaintiff
201 Townsend St., Suite 900
Lansing, MI 48933
Dated:  December 18, 2017            (517) 374-9150

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

E.L. HOLLINGSWORTH & CO., a
Michigan corporation,

        Plaintiff/Counter-Defendant,

v.

ZURICH AMERICAN INSURANCE
COMPANY, an Illinois corporation,

        Defendant/Counter-Plaintiff.

Case No. 17-cv-10989

Judge David M. Lawson

Magistrate Judge R. Steven Whalen

---

Eric W. Ruth (P80538)
E.L. Hollingsworth & Co.
Attorney for Plaintiff/Counter-Defendant
3039 Airport Drive, North
Flint, MI  48507
(810) 233-7331
eruth@elhc.net

Lori McAllister (P39501)
Attorney for Defendant/Counter-
Plaintiff Zurich American Insurance
Company
DYKEMA GOSSETT PLLC
Capitol View Bldg.
201 Townsend Street, Suite 900
Lansing, MI  48933
(517) 374-9150
lmcallister@dykema.com

---

## DEFENDANT/COUNTER-PLAINTIFF ZURICH AMERICAN INSURANCE COMPANY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS AND AS TO <u>ZURICH'S COUNTERCLAIM</u>

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................... iii

STATEMENT OF ISSUES PRESENTED...............................................................iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...............................v

INTRODUCTION ...................................................................................................1

STATEMENT OF UNDISPUTED FACTS .............................................................2

ARGUMENT ...........................................................................................................7

I.      STANDARD OF REVIEW .........................................................................7

II.     PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE
        ZURICH PAID THE CLAIMS WHICH WERE THE SUBJECT OF THE
        RETROSPECTIVE PREMIUM ENDORSEMENT......................................7

III.    ZURICH IS ENTITLED TO SUMMARY JUDGMENT ON ITS
        COUNTERCLAIM FOR PAYMENT OF RETROSPECTIVE PREMIUM
        ADJUSTMENTS NOW DUE ......................................................................11

CONCLUSION ......................................................................................................13

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

# INDEX OF AUTHORITIES

**CASES**

*Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560; 489 N.W.2d 431 (1992).......8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) ..............................7

*Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc.*,
   477 Mich. 75; 730 N.W.2d 682 (2007)..................................................................8

*Emswiler v. CSX Transp., Inc.*, 691 F.3d 782 (6th Cir. 2012)..................................7

*Federal-Mogul U.S. Asbestos Personal Injury Trust v. Continental Cas. Co.*,
   666 F.3d 384 (6th Cir. 2011) ...........................................................................7, 8

*Ins. Co. of North America v. Forty-Eight Insulations, Inc.*,
   451 F. Supp. 1230 (E.D. Mich. 1978)...................................................................8

*Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161; 848 N.W.2d 95,
   *reconsideration denied*, 495 Mich. 998; 845 N.W.2d 742 (2014) ........................8

*Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41; 664 N.W.2d 776 (2003) ................8

**RULES**

Fed. R. Civ. P. 56.......................................................................................................7

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.    Should this Court grant summary judgment to Defendant when Plaintiff cannot identify any factual basis for its claim that Defendant breached the terms of the insurance policy where Defendant is charging Plaintiff only for claims Defendant actually paid?

Defendant says "yes."

Plaintiff says "no."

II.    Should this Court grant summary judgment to Defendant as Counter-Plaintiff where Plaintiff admits that it purchased an insurance program that authorizes retrospective adjustments of its insurance premiums and Plaintiff admits it has not paid those premiums when due?

Defendant/Counter-Plaintiff says "yes."

Plaintiff/Counter-Defendant says "no."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

Fed. R. Civ. P. 56

*Federal-Mogul U.S. Asbestos Personal Injury Trust v. Continental Cas. Co*., 666 F.3 384 (6th Cir. 2011)

*Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161; 838 N.W.2d 95, *reconsideration denied*, 495 Mich. 998; 845 N.W. 2d 742 (2014)

## INTRODUCTION

This case involves a dispute over Plaintiff E.L. Hollingsworth's ("ELH") failure to pay retrospectively adjusted insurance premiums owed to Defendant Zurich American Insurance Company ("Zurich").  ELH filed a case peremptorily when Zurich demanded payment under the terms of the insurance policies and other agreements entered into between the parties.  Plaintiff's one count Complaint for breach of the 2012/2013 policy is based on an allegation that Zurich did not pay the claims for which it is seeking reimbursement under the retrospective premium adjustment mechanism agreed to by the parties.  (Complaint, ¶ 13.)  As set forth herein, Zurich paid each and every claim that is included in the premium adjustment, and even after being given full access to Zurich's electronic claims files, Plaintiff has not identified a single claim that was not really paid by Zurich.  As a result, Zurich is entitled to summary judgment on Plaintiff's Complaint.

Zurich is also entitled to summary judgment on its Counterclaim, which seeks payment of billed but unpaid retrospective premium adjustments.  A retrospectively rated premium is one in which the policyholder pays a smaller premium at the inception of the policy than would be paid if the policyholder purchased a standard insurance policy.  As losses on the policies develop over time and are paid by the insurance company, the insurance company has the contractual right to process a retrospective adjustment of the premium based on a detailed

1

formula agreed to by the parties at the inception of the policy. As applied here, as more losses were and are incurred by ELH and paid by Zurich, the more premium ELH owes to Zurich. In this case, ELH incurred numerous losses, resulting in Zurich paying significant amounts for claims which it is entitled to recover in retrospective premium adjustments. Zurich has filed a counterclaim for the unpaid retrospectively rated insurance premiums it is owed of $158,082. Zurich is entitled to be reimbursed this amount because (1) it is clearly owed under the contracts between the parties, (2) the amounts stated in the calculation of additional premiums were actually paid by Zurich, and (3) Plaintiff has refused to pay the amounts due. Zurich is entitled to the full amount due pursuant to the agreements of the parties.

## STATEMENT OF UNDISPUTED FACTS

ELH is primarily engaged in furnishing over-the-road trucking and storage services, either as a common carrier or under special or individual contracts or agreements. (Compl., ¶8.) As such, it needs commercial automobile insurance coverage, workers' compensation coverage, trucker's coverage, and other miscellaneous commercial coverages. In the fall of 2007, ELH approached Zurich for a quote on its commercial policies through its independent agent, Wells Fargo Agency, Inc. On October 14, 2007, coverage was bound for the policy for a one-year period. (Affidavit of Nancy Dow, attached as Exhibit A.) A copy of the

2

2007/2008 policy is attached as Exhibit A-1.  As part of the transaction, ELH sought a way to decrease its up-front cost of insurance.  The parties ultimately agreed to incorporate two approaches in order to reduce the up-front premium due to Zurich.  First, ELH agreed to pay a higher deductible for each claim incurred on the policy.  By the time of the 2012/2013 policy, the deductible had increased to $100,000 per claim.  (Ex. A-4, p. Z000125.)  Because Zurich's indemnity risk does not kick in until the higher deductible is reached on the claim, it was able to reduce the premium charges to ELH.  (Dow Aff., ¶3)  It is significant, however, that even though Zurich's indemnity obligation does not begin until the deductible amount is reached, Zurich's duty to defend covered claims starts immediately upon the reporting of the claim.  (Ex. A-1, p. Z000024.)

The second approach to decrease ELH's up-front premium charges is the use of a retrospectively rated insurance policy, pursuant to which Zurich would pay covered claims and those payments, as well as reserves, would become part of the retrospective premium calculation that would be made every year.  This could result in an additional amount of premium due to Zurich, or a decreased amount if a claim settles for less than the reserve.  This type of agreement to use a retrospective premium adjustment is reflected in both the policy itself, as well as two non-policy agreements.  (Dow Aff., ¶3.)  As part of the policy, Zurich issues a "Retrospective Premium Endorsement".  (Ex. A-1, p. Z000043-47.)  The

3

Endorsement "explains the rating plan and how the retrospective premium will be determined." There are five standard elements that go into the calculation of a retrospective premium and two elective elements. These include items like the standard premium, incurred losses and taxes. *Id.* The retrospective premium "is the sum of basic premium, converted losses, and taxes, plus the excess loss premium and retrospective development premium elective elements if you choose them." (Ex. A-1, § C.1, p. Z000044) The retrospective premium is subject to maximum and minimums each year. (Ex. A-1, § C.2, p. Z000044.) The retrospective premium is calculated as of a date six months after the rating plan period ends "and annually thereafter." (Ex. A-1, § D.1, p. Z000044.) After each calculation of retrospective premium, the insured agrees that it "will pay promptly the amount due" to Zurich, or that Zurich will issue a refund if one is due. (Ex. A-1, § D.3, Z000044.) The declarations, together with the common policy conditions, coverage part declarations, coverage part forms, forms and endorsements issued to ELH "complete the above numbered policy." (Ex. A-1, p. Z00001; see also, Ex. A-4, p. Z000166-171.)

Because ELH purchased an insurance program that contained a retrospective rating endorsement, it also entered into two non-policy agreements with Zurich: the Incurred Loss Retrospective Rating Agreement, attached as Exhibit A-2, and the Specifications to the Deductible Agreement, attached as Exhibit A-3. After the

4

expiration of the 2007/2008 policy, ELH purchased additional policies for the following periods:  October 14, 2008-October 14, 2009, October 14, 2009-October 14, 2010, and October 14, 2012-October 14, 2013.  Plaintiff's Complaint is specific to the commercial trucking policy effective from October 14, 2012 to October 14, 2013. A copy of this policy is attached as Exhibit A-4.  The Incurred Deductible Agreement for the 2012/2013 policy year is attached as Exhibit A-5.

Because all the policies issued by Zurich to ELH contained the same basic retrospective premium endorsement and the non-policy agreements, Zurich began issuing retrospective premium adjustment invoices starting in 2009.  These adjustments were paid without complaint until April 8, 2015, when the first invoice at issue in this litigation was issued.  (Dow Aff., ¶4-6.)  A copy of the first disputed invoice is attached as Exhibit A-6.  The 2015 April invoice reflects a total amount due of $56,110 as of a valuation date of March 31, 2015.  As noted in the "Program Details" section on page 3 of the invoice, this amount reflects $36,302 as a second adjustment on the program period of October 14, 2012 to October 14, 2013, and the sixth adjustment to the October 14, 2008 to October 14, 2009 policy in the amount of $19,808.

On April 18, 2016, Zurich issued an invoice to Plaintiff in the amount of $79,594.00 reflecting the annual retrospective premium adjustments as of a valuation date of March 31, 2016.  A copy of this invoice is attached as Exhibit A-

5

7.  The amount due is comprised of $79,534 owed for the third adjustment on the 2012-2013 policy term and $60 owed for the seventh adjustment on the 2008-2009 policy term.  *Id*.  (Dow Aff., ¶7-8.)

On May 29, 2017, Zurich issued an invoice to Plaintiff in the amount of $22,378 reflecting annual retrospective premium adjustments for the valuation date as of March 31, 2017.  A copy of this invoice is attached as Exhibit A-8.  The amount due was comprised of $7,371 owed for the fourth adjustment on the 2012-2013 policy term and $15,007 owed for the eighth adjustment on the 2008-2009 policy term.

ELH apparently believes – without any evidentiary foundation – that Zurich did not actually pay the amounts that are shown in the invoices.  However, each payment used in the calculation of the retrospective premium adjustment was actually paid by Zurich to a claimant or as defense costs on the file.  (Dow Aff., ¶ 11.)  ELH has not provided any contrary evidence despite being given ample opportunity to peruse every single claim file and documentation of every payment made by Zurich for months.  Zurich provided ELH and its counsel with direct access to the electronic database housing all of the information regarding the claims made against ELH.  This access included the ability to see every payment that was made by Zurich, how much was paid on each and every claim, as well as all other parts of the claims files.  (Dow Aff., ¶ 12.)  Despite this, ELH has not

6

identified a single invoice that was not paid by Zurich or a duplicate payment that was made by both Zurich and ELH to a claimant or in defense costs. *Id*.

The total of the three outstanding invoices owed to Zurich is $158,082. Rather than paying its invoices, ELH filed this case, seeking to get out of its obligation to pay the retrospective premium adjustments and to recover an unspecified amount from Zurich.

## ARGUMENT

## I.      STANDARD OF REVIEW

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate "where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Emswiler v. CSX Transp., Inc*., 691 F.3d 782, 788 (6th Cir. 2012), citing Fed. R. Civ. P. 56 (internal citations and quotations omitted).  The non-moving party is required to move beyond the pleadings and present evidentiary support for their positions.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

## II.     PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE ZURICH PAID THE CLAIMS WHICH WERE THE SUBJECT OF THE RETROSPECTIVE PREMIUM ENDORSEMENT.

Because this is a diversity case involving an insurance policy issued in Michigan, Michigan law applies.  *Federal-Mogul U.S. Asbestos Personal Injury Trust v. Continental Cas. Co.*, 666 F.3d 384, 387 (6th Cir. 2011); *Ins. Co. of North*

7

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

*America v. Forty-Eight Insulations, Inc.*, 451 F. Supp. 1230, 1237 (E.D. Mich. 1978). Interpretation of an insurance policy is a question of law for the Court. *Federal-Mogul*, 666 F. 3d at 387.

"An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566; 489 N.W.2d 431 (1992). If the language of the policy is clear, it must be enforced as written, so that an insurance company is not held liable for a risk that it did not assume. *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41; 664 N.W.2d 776 (2003). A court should not create an ambiguity in a policy where the terms are clear and precise under the guise of interpretation. *Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc.*, 477 Mich. 75; 730 N.W.2d 682, 685 (2007). A party "asserting breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178; 848 N.W.2d 95, *reconsideration denied*, 495 Mich. 998; 845 N.W.2d 742 (2014).

Plaintiff's Complaint alleges no real facts in support of its breach of contract claim. The Complaint admits that the 2012/2013 policy year contract was subject to retrospective premium adjustments. (Compl., ¶10.) Plaintiff's allegation of

8

breach is that Zurich "erroneously applied alleged payment of claims to the Retrospective Adjustments for which it did not actually pay.  As a result of this error, Plaintiff is owed an amount in excess of $25,000." (Compl., ¶13.)  Plaintiff also alleges that Defendant "has not provided any proof that it has paid any amount in claims for the policy period." (Compl., ¶14.)  Neither allegation is true.

Initially, the only claims payments that were subject to the retrospective premium calculation were payments made by Zurich to a claimant against ELH or as defense costs on the particular claim.  (Dow Aff., ¶ 11-12.)  If, as ELH contends, that it paid some of its own claims, that is irrelevant.  The calculation does not include any claims that ELH may have paid on its own claims, it only includes payments on claims paid directly by Zurich.  *Id*.  The evidence is undisputed that Zurich paid the amounts reflected in the invoices, and thus there was no breach as alleged by ELH.

While ELH has argued that there may have been claims subject to duplicate payment by both Zurich and ELH, it has not produced a shred of evidence that establishes any claim was subject to duplicate payment.  Zurich provided ELH with months of access to its system so that it could review every single claim, every invoice, and every payment.  It also provided a summary of its payments to ELH for further verification.  (Exs. A-9 and A-10.)  No duplicates were ever identified.

9

Under the terms of the Retrospective Endorsement and the related Agreements, Zurich is entitled to be paid based on claims that it paid on ELH's behalf – regardless whether ELH acted on its own and voluntarily paid some of its claims.   The Endorsement expressly states that the Retrospective Premium Standard Elements" includes "incurred losses," which "are all amounts we pay or estimate we will pay for losses and the following expenses …"   (Ex. A-1, p. Z000043; Ex. A-4, p. Z000166.)   There is no set-off indicated for payments that <u>ELH</u> may make on its own.

Second, ELH cannot establish a breach of the 2012/2013 policy because it was allegedly not provided with proof of payment.  Prior to filing suit, ELH had been provided with a spreadsheet that showed each payment that had been made by Zurich.  (Dow Aff., ¶ 14.)  Nothing in the policy requires more than the annual production of an invoice showing the sums paid and the amounts due.  Moreover, when the lawsuit was filed, Zurich literally permitted ELH to access every document in its claims system pertaining to ELH, including the documentation behind each and every claims payment.

There was no breach of contract by Zurich.  The Complaint must be dismissed.

10

### III.   ZURICH IS ENTITLED TO SUMMARY JUDGMENT ON ITS COUNTERCLAIM FOR PAYMENT OF RETROSPECTIVE PREMIUM ADJUSTMENTS NOW DUE.

In its Counterclaim, Zurich requests judgment against ELH for its failure to pay its retrospective premium adjustments.  To date, the only defense raised by ELH against paying the adjustments has been its speculative belief that maybe Zurich did not pay the amounts that are listed in the detailed invoices which it has been sent.  That defense, however, is merely the flip side of its breach of contract claim, and is defeated by the exact same policy provisions.  The policies and the accompanying agreements – all signed by ELH, require it to pay the premium adjustments when due.

The fact that ELH paid a number of retrospective rating premium adjustments without complaint speaks volumes about the credibility of the claims now raised by ELH.  Prior to the April 2015 adjustment, ELH did not contest the adjustments using any of the theories it now advances in this case.  Those adjustments will continue until such time as all the claims covered by the Program are paid or ELH hits its maximum premium adjustment per the parties' earlier agreements.  ELH has breached the contracts by failing to pay the amounts due as reflected on the detailed invoices it has received.  The time for speculation is passed.  The evidence supports only one conclusion here – that ELH should be ordered to pay the amounts due.

11

ELH has also argued, but not pled, that it had the right to consent to all settlements. Of course, this argument is contrary to the policy, which states that Zurich "will have the right and duty to defend any "insured" against a "suit" asking for such [bodily injury or property] damages or a "covered pollution cost or expense." (Ex. A-4, p. Z000110.) We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of insurance has been exhausted by payment of judgments or settlements." *Id.*, Section II – Liability Coverage, A. Coverage. Further, under Section V of the policy – Motor Carrier Conditions, the policy states:

> 2. **Duties in the Event of Accident, Claim, Suit or Loss**. We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> ***
>
> b. Additionally, you and any other involved "insured" must:
>
> (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

Ex. A-4, p. Z000117. Accordingly, under the plain terms of the policy, Zurich is entitled to settle the claims and handle the defense of those claims. Even without this authority, however, Zurich is entitled to retrospectively adjust the premiums

12

for claims it actually paid – and the facts are undisputed here that Zurich paid all amounts that are in the retrospective premium adjustment.

Likewise, the Incurred Deductible Agreement states as following with regard to claims:

> Under the [Incurred Deductible] Program, We handle and pay the claims presented in accordance with the provisions of the Policy(ies).

Ex. A-2 and A-5.  "We" is defined to be Zurich.  *Id.*

ELH cannot avoid its obligations by claiming that it did not read the policy or understand its terms.  Under Michigan law, ELH cannot claim that it is ignorant of the terms of their policies as a matter of law, as it had a duty to read its policies. *Casey v. Auto Owners Ins. Co*., 273 Mich. App. 388, 394-95; 729 N.W.2d 277 (2006). *Harts v. Farmers Ins. Exchange*, 461 Mich. 1, 8; 597 N.W.2d 47 (1999), quoting *Parmet Homes, Inc. v. Republic Ins. Co.*, 111 Mich. App. 140, 144; 314 NW2d 453 (1981).  Those contractual terms are unambiguous, entitling Zurich to summary judgment.

## CONCLUSION

Plaintiff's Complaint is not supported by any evidence and must be dismissed.  Moreover, Zurich is entitled to be paid under the undisputed terms of the agreements between the parties.  It is entitled to judgment in its favor on the Counterclaim.

13

Respectfully submitted,

Dated:  December 18, 2017                     Dykema Gossett PLLC


                                              */s/ Lori McAllister*                     
                                              Lori McAllister (P39501)
                                              Counsel for Defendant/Counter-Plaintiff
                                              201 Townsend St., Suite 900
                                              Lansing, MI 48933
                                              (517) 374-9150
                                              lmcallister@dykema.com

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF user.

*/s/ Lori McAllister*
Lori McAllister (P39501)
Counsel for Defendant/Counter-Plaintiff
201 Townsend St., Suite 900
Lansing, MI 48933
(517) 374-9150
lmcallister@dykema.com

4819-1448-3032.1
ID\ 023012\000047

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

15