UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

E. L. HOLLINGSWORTH & COMPANY,

      Plaintiff and counter-defendant,      Case Number 17-10989
                                                         Honorable David M. Lawson
v.

ZURICH AMERICAN INSURANCE COMPANY,

      Defendant and counter-plaintiff.
_____/

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
BY DEFENDANT AND COUNTER-PLAINTIFF ZURICH
AMERICAN INSURANCE COMPANY**

Plaintiff E. L. Hollingsworth & Company filed a complaint against its insurance carrier, defendant Zurich American Insurance Company, alleging that Zurich overcharged it for premiums on its truck fleet insurance. The premiums, although set in advance, were subject to an "Incurred Loss Retrospective Rating Agreement" that allowed Zurich to charge additional amounts (or refund them, as the case may be) based on an agreed formula. Zurich issued invoices to Hollingsworth in 2015, 2016, and 2017 under the retrospective rating agreement. Hollingsworth refused to pay them and filed this lawsuit challenging their validity. Zurich filed a counterclaim for the amounts due, and, after the discovery period closed, moved for summary judgment. Hollingsworth has been given the opportunity to produce evidence showing that the retrospective rating formula was misapplied, and to identify those cases it believes Zurich settled in violation of their agreement. But its response to the summary judgment motion falls short on that score, and plaintiff's counsel candidly acknowledged at oral argument that such evidence likely would not be forthcoming. The record does not yield any material fact issue, and it demonstrates that Zurich is entitled to judgment as a matter of law in its favor on the complaint and its counterclaim.

I.

Hollingsworth is a logistics firm that operates a fleet of over 400 "trucking units." In 2007, Hollingsworth sought to insure its fleet, and began negotiating a policy with Zurich. Jeff Berlin, Hollingsworth's chief financial officer and executive vice president, attests that "it was made clear" during the ensuing negotiations that Hollingsworth sought to "handle" all claims within its deductible, maintain "significant oversight" of all claims outside of the deductible, and retain final authority to settle all claims. According to Berlin, Zurich accepted those terms.

Keith Klingenberg, a Wells Fargo employee who served as the insurance broker for Hollingsworth during these negotiations, testified in an affidavit that "during the negotiations . . . it was made clear to all parties that [Hollingsworth] would be allowed to handle all claims that were within their deductible." Klingenberg also testified that "it was Zurich's position at the time that all claim settlements would be approved by Jeff Berlin, CFO of [Hollingsworth]."

Zurich disputes that it agreed to those terms, citing the contract between Zurich and Hollingsworth, which states:

> We [Zurich] will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of insurance has been exhausted by payment of judgments or settlements.

Def's. Mot. Ex. A-4, Common Policy Declarations § 2 ¶ A (Pg ID 249-250).

According to Zurich, during the negotiations, Hollingsworth sought a way to reduce the up-front cost of their insurance policy. To that end, Hollingsworth agreed to several additional terms reflected in the final policy and in an "Incurred Loss Retrospective Rating Agreement" and a

"Deductible Agreement." Those agreements reduced up-front premium costs in two ways: Hollingsworth agreed to pay a higher deductible per claim; and Hollingsworth agreed to assume part of Zurich's risk through a "retrospectively rated" insurance policy. By the 2012/2013 policy year, the deductible for trucker's liability was $100,000 per claim. Under such a policy, Zurich would pay claims that exceed Hollingsworth's deductible as under a conventional policy, but Hollingsworth's premiums would be adjusted retrospectively each year "based on agreed-upon factors such as standard premium, incurred losses, reserves for losses, and taxes." Put simply, Zurich would issue a supplemental premium invoice each adjustment period; the more Zurich had paid to settle claims during the adjustment period, the higher Hollingsworth's adjusted premium would be.

After the policy for 2007/2008 expired, Hollingsworth repurchased insurance each year. According to Zurich, each renewal policy included substantially the same terms as the 2007/2008 policy and the supplemental agreements signed in 2007 were still in effect. Zurich issued its first "retrospective premium adjustment" invoice in 2009, and continued to issue adjustment invoices semi-annually. Hollingsworth paid those premium adjustments without dispute until Zurich's April 8, 2015 invoice. The April 8 invoice reflected additional charges of $56,110: $36,302 for the 2012/2013 coverage period, and $19,808 for the 2008/2009 period. On April 18, 2016, Zurich issued an invoice for $79,594: $79,534 for the 2012/2013 period, and $60 for the 2008/2009 period. On May 29, 2017, Zurich issued an invoice for $22,378: $7,371 for the 2012/2013 period, and $15,007 for the 2008/2009 period. Each amount reflected a payment either to a claimant or as defense costs on the claim. At the time Zurich filed this motion, Hollingsworth had not paid any of

these invoices. Zurich alleges that Hollingsworth owes $158,082 in total retrospectively adjusted premiums.

According to Hollingsworth, Zurich settled claims at higher costs than Hollingsworth was able to negotiate individually. Hollingsworth cites one instance in which Jeff Berlin contends that he was able to negotiate a smaller settlement with a claimant than what Zurich was initially willing to offer. But Hollingsworth does not provide evidence that Zurich actually overpaid when settling claims. Hollingsworth also believes that Zurich made payments on claims within Hollingsworth's deductible and upon which Hollingsworth had already paid, thereby increasing Hollingsworth's retrospective premiums. Again, however, Hollingsworth offers no specific examples, other than Berlin's own suspicions.

When Zurich submitted its April 8, 2015 invoice to Hollingsworth, Berlin requested that Zurich provide information on the payments it had made on claims Zurich paid within Hollingsworth's deductible. Berlin also asked Zurich to provide information on several larger claims on which Berlin felt Zurich had overpaid. Berlin was unsatisfied with the response. He says that although Zurich provided a spreadsheet with information on claims Zurich had paid, it was incomplete or unclear, and did not assuage his concerns that Zurich was overpaying on claims or paying claims within Hollingsworth's deductible that Hollingsworth had already dealt with. Zurich included a copy of that spreadsheet in its motion papers, which identifies the policy number, claim number, date of loss, and the net paid indemnity and expenses. With its response, Hollingsworth has provided miscellaneous paperwork regarding several claims Berlin feels were paid by both Zurich and Hollingsworth. Pl.'s Resp., Ex. 1, Berlin Decl. ¶ 7 (Pg ID 473); Pl's. Resp. Ex. A-3 (Pg ID 477) ("Some of the claims that I believe were paid by both Zurich and Hollingsworth are attached

to this Declaration as Exhibit A-3."). But those documents are incomplete and disorganized, and it is impossible to compare them to the information Zurich has furnished to determine if, as Hollingsworth alleges, Zurich has been making payments on cases Hollingsworth has already settled. And Hollingsworth has not offered any explanatory testimony. Nancy Dow, a Legal Collections Specialist employed by Zurich, testified that she reviewed the Zurich files relevant to those claims and did not find any instance in which Zurich duplicated a payment made by Hollingsworth.

Hollingsworth has been withholding its adjusted premiums since 2015. It believes Zurich is overpaying on large claims and paying small (under Hollingsworth's deductible) claims that Hollingsworth has already settled on its own. Hollingsworth believes that, by overpaying and paying already settled claims, Zurich is causing Hollingsworth's retrospectively adjusted premiums to rise unfairly. But it has not been able to point to any specific claim that might support its belief.

During the discovery process in this case, Zurich gave Hollingsworth full and direct access to its claims database, allowing Hollingsworth to "see every payment that was made by Zurich, how much was paid on each and every claim, as well as all other parts of the claims files." Dow Aff. at ¶ 2 (Pg ID 524-525). Berlin testified that technical issues and incompatibilities prevented him from accessing the database and reviewing the claims in question. Dow testified that Zurich provided technical support and training to Berlin and to Hollingsworth's counsel, after which Berlin did not raise access concerns until the discovery deadline passed and Zurich terminated Hollingsworth's access to the database.

Hollingsworth filed its lawsuit in state court, and Zurich removed it under diversity jurisdiction. The one-count complaint alleges Zurich breached its contract with Hollingsworth when

it erroneously applied payments of claims to retrospective adjustments that Zurich had not in fact paid. On March 30, 2017, Zurich filed an answer and counterclaimed that Hollingsworth breached their agreement by repeatedly failing to pay the premiums when due. After discovery closed, Zurich filed its summary judgment motion asking that the complaint be dismissed and for judgment on the counterclaim.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, the party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). If the party opposing the motion contends facts are in dispute, it may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Nor may it "simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).

Instead, the opposing party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Those facts must be "established by evidence that will be admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.

2009) (citing Fed. R. Civ. P. 56(e)(2)) If the non-moving party, after sufficient opportunity for discovery, is unable to meet its burden of production, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Highland Capital*, 350 F.3d at 564 (quoting *Anderson*, 477 U.S. at 252) (quotations omitted).

The parties do not dispute that in this diversity action, the Court must follow Michigan substantive law, as prescribed by the state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). If the Michigan Supreme Court has not addressed a determinative point of law, this Court "must predict how it would resolve the issue from 'all relevant data.'" *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (citing *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Ibid.* (citing *FL Aerospace v. Aetna Casualty and Surety Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990)).

A.

Zurich relies on basic contract principles and insists that Hollingsworth's complaint fails as a matter of law because there is no evidence that supports it. Under Michigan law, "'[a] party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach.'" *AFT Michigan v. Michigan*, 303 Mich. App. 651, 660, 846 N.W.2d 583, 590 (2014) (quoting *Miller-Davis Co. v. Ahrens Constr., Inc.*, 296 Mich.

App. 56, 71, 817 N.W.2d 609 (2012)). Zurich says there is no evidence to support the second and third elements.

In its terse response, Hollingsworth maintains that at the time the agreement was entered into, it was assured that it would be able to handle all claims within its deductible and that all claims that were settled would be authorized by its CFO, Jeff Berlin. But that is not what the contract says.

When enforcing a contract, the first objective is to "honor the intent of the parties," *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n.28, 517 N.W.2d 19, 29 n.28 (1994), and the prime source of that intent is the plain language of the agreement, *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 61, 664 N.W.2d 776, 787 (2003) ("Well-settled principles of contract interpretation require one to first look to a contract's plain language."). The insurance contract plainly says that Zurich could choose which claims to pay on Hollingsworth's behalf. The section on liability coverage states "[w]e may investigate or settle any claim or 'suit' as we consider appropriate." (The contract also explains that "[t]he words 'we', 'us' and 'our' refer to" Zurich.) Hollingsworth evidently does not dispute the meaning of those terms, but instead argues that at the time of negotiations, Zurich represented that Hollingsworth would be able to "handle" all claims within its deductible. Hollingsworth believes this difference in the parties' understanding of the policy creates a fact dispute to be resolved at trial.

Michigan law does not support that position. If the contract language is "clear and unambiguous," the Court does not look beyond the written words to ascertain its meaning. *Haywood v. Fowler*, 190 Mich. App. 253, 258, 475 N.W.2d 458, 461 (1991). A contract is not ambiguous if it "fairly admits of but one interpretation." *Allstate Ins. Co. v. Goldwater*, 163 Mich. App. 646, 648-49, 415 N.W.2d 2, 4 (1987). No one here suggests that the insurance contract is ambiguous.

Therefore, Hollingsworth's account of their negotiations is irrelevant because the policy's language regarding Zurich's authority to settle claims within or outside Hollingsworth's deductible is "clear and unambiguous" — Zurich was authorized to resolve any claim or suit at its discretion. There appears to be no limitations placed on Zurich's authority, despite Hollingsworth's grievance that Zurich overpaid on several occasions. That Hollingsworth disagreed with the amounts or could have achieved a "better deal" does not amount to a breach of the policy's terms as written. Moreover, Hollingsworth has no answer for why it did not assert such a defense in the years that it dutifully paid the retrospectively adjusted premiums.

The Michigan Court of Appeals has confronted and enforced similar terms in favor of an insurance company on at least one occasion. In *Insurance Co. of North America v. L.C. Young Painting & Decorating Co.*, 11 Mich. App. 304, 161 N.W.2d 24 (1968), the court found "no inconsistency" between a $100 deductible applied to each claim and "the clauses that authorize the [insurance company] to settle 'any claim or suit as it deems expedient'. . . and obligate the [insured] to reimburse the [insurance company] for any portion of the deductible amount paid by the [insurance company] to effect settlement of any claim or suit." *Id.* at 308, 161 N.W.2d at 26. There, the parties disputed whether those ostensibly contradictory terms prevented the insurance company from (a) settling claims for less than $100 each and (b) requiring the insured to repay the sum paid on those claims without waiting until judgment had been entered against the insured on each claim. *Ibid*. Applying traditional principles of contract interpretation, the court concluded the insurance company had "[t]he right . . . to settle any claim or suit," and that it was not limited to those cases where "a judgment had been entered against the [insured]." *Id.* at 308, 161 N.W.2d at 26-27. The court found that the policy was unambiguous and its "plain meaning" allowed the insurer to "settle

a claim or suit even though the $100 deductible provision applied and [it] could require the [insured] to reimburse it for such part of the deductible amount as [the insurance company] paid to effect settlement." *Ibid.*

But even if Berlin was entitled to settle claims on behalf of Hollingsworth within its deductible, Hollingsworth has not identified a single claim that it paid within its deductible that is included in the three outstanding invoices. Zurich has maintained that those invoices reflect payments actually made by Zurich only — there were no duplicate payments — but nevertheless it gave Hollingsworth complete access to its records during discovery so that Hollingsworth could independently verify its allegations. Hollingsworth explains its failure to do so on its inability to navigate its way through Zurich's computer databases, and that Zurich refused Hollingsworth's requests for assistance. Zurich says otherwise, but even if that were true, Hollingsworth never filed a motion to compel production or sought the Court's assistance in resolving the issue before this summary judgment motion was filed. It cannot be heard to complain now. *Cf. Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 200 (E.D. Mich. 2002) (Pepe, J.) ("In numerous cases, courts have denied tardy discovery motions that were filed after the close of discovery, especially where the moving party had all the information it needed to timely file the discovery motion, and its late filing would prejudice the non-moving party.").

Other than insisting that the parties agreed to different terms — an assertion debunked by the plain contract language — Hollingsworth has failed to substantiate its overcharge claim in any way. *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.") (emphasis added). Hollingsworth cannot sustain a breach of contract claim, and its complaint will be dismissed.

B.

In its counterclaim, Zurich asks for judgment against Hollingsworth on its unpaid invoices, which it now contends it is entitled to as a matter of law. The same summary judgment rules apply. But when the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense"). In his commentary on affirmative motions for summary judgment, Judge William Schwarzer explains:

> When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion — by showing that no genuine dispute exists as to any material fact — and the ultimate burden of persuasion on the claim — by showing that it would be entitled to a directed verdict at trial.

William W. Schwarzer, et al., The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 477-78 (1992) (footnote omitted).

The parties arguments mirror in most respects their same dispute over the complaint. Zurich argues that it is entitled to summary judgment on its counterclaim because the agreement unambiguously states that Hollingsworth is required to pay the amounts due. Hollingsworth argues that Zurich is not entitled to summary judgment on its counterclaim because there exist several

instances of duplicated payments. Hollingsworth concedes that it has not produced any evidence to substantiate that claim, but it argues that Zurich impeded its efforts to review the relevant documents. Hollingsworth believes the Court cannot grant summary judgment on the counterclaim until that evidence is provided by Zurich. Zurich replies that Hollingsworth's reliance on the absence of proof of payment is misplaced because Zurich was required to produce an invoice of sums paid only, not the payments themselves. Zurich also represents that it gave Hollingsworth access to every document in its claims system pertaining to Hollingsworth, but Hollingsworth did not go through the documents.

Once again, Zurich has the better argument. It has submitted three invoices that reflect past-due retrospectively adjusted premiums owed by Hollingsworth. Through sworn declarations, Zurich represents that each invoice reflects payments made by Zurich to a claimant or as defense costs on the claim, *see* Dow Decl. ¶ 11 (Pg ID 113), and that none of the invoices include claims paid by Hollingsworth, *see* Dow Decl. ¶ 5 (Pg ID 525). To rebut that testimony, Hollingsworth relies on Berlin's declaration, which merely states his belief that Hollingsworth paid numerous claims within its deductible, which are duplicated in those invoices, and that "some of the claims that [he] believe[s] were paid by both Zurich and Hollingsworth are attached to this Declaration as Exhibit A-3." Berlin Decl. ¶¶ 6, 7 (Pg ID 473). Rather than specifically indicating which claims on Zurich's spreadsheet are in duplicate, Hollingsworth presents 34 pages of invoices, check draft requests, and other paperwork to substantiate its position. Without an explanation from Berlin, those documents amount to no proof at all, as Rule 56(c) requires. *See* Fed. R. Civ. P. 56(c)(1)(A), (B) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . *citing . . . particular parts of materials in the record* . . . or showing that the materials cited do not establish

the absence . . . of a genuine dispute.") (emphasis added); *see also Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 880-81 (E.D. Mich. 2018) (finding an insufficient response to a summary judgment motion where the plaintiff filed "a prolix, undifferentiated mass of inscrutable technical diagrams and scrawlings, which they contend illustrate numerous [statutory violations]," because "[t]he mere reference to those statements, inviting the court to cull through them in search of a fact question, 'falls well short of direct[ing] the court's attention to those specific portions of the record upon which [the plaintiff sought] to rely to create a genuine issue of material fact'") (quoting *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017)).

What's more, Zurich's Legal Collection Specialist, Nancy Dow, testified that she reviewed the exhibits attached to Berlin's declaration and "found no instance where Zurich had paid the invoices attached by Mr. Berlin or where a payment by Zurich duplicated a payment made by Plaintiff." Dow Decl. ¶ 5 (Pg ID 525). Those statements are unrebutted in this record. Viewing the facts in the light most favorable to Hollingsworth, there is no evidence to refute Zurich's claim that Hollingsworth owes the amounts noted in the three invoices. "The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (citing *Skousen v. Brighton High School*, 305 F.3d 520, 528 (6th Cir. 2002)).

III.

Hollingsworth has refused to pay three outstanding invoices for adjusted insurance premiums that were issued under the written insurance contract documents. It has not supported its overcharge claim with any evidence when challenged to do so by Zurich's summary judgment motion. Zurich,

therefore, is entitled to a judgment as a matter of law on the plaintiff's complaint and its counterclaim.

Accordingly, it is **ORDERED** that the defendant and counter-plaintiff's motion for summary judgment [dkt. #9] is **GRANTED**.

It is further **ORDERED** that the plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that counter-plaintiff Zurich American Insurance Company is entitled to judgment against counter-defendant E. L. Hollingsworth & Company in the amount of $158,082.00.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: April 16, 2018

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 16, 2018.

s/Susan Pinkowski  
SUSAN PINKOWSKI